984 So.2d 323 (2007)
Tyrone MORTON and Annie Morton, Appellants
v.
CITY OF SHELBY and James Carmicle, in his Individual and Official Capacity, Appellees.
No. 2006-CA-00255-COA.
Court of Appeals of Mississippi.
November 20, 2007.
Rehearing Denied March 11, 2008.
*326 Sarah O'Reilly-Evans, Carrie Johnson, Clarksdale, attorneys for appellants.
Roy Jefferson Allen, Clarksdale, attorney for appellees.
Before MYERS, P.J., BARNES and ROBERTS, JJ.
BARNES, J., for the Court.
¶ 1. This suit, brought under the Mississippi Tort Claims Act ("MTCA"), arose from injuries that Tyrone Morton sustained when he was struck by a police car operated by James Carmicle, a police officer employed by the City of Shelby Police Department. Morton appeals from the Bolivar County Circuit Court's grant of summary judgment in favor of Officer Carmicle and the City of Shelby. Morton contends that the trial court erred in (1) incorrectly applying the summary judgment standard; (2) finding that there were no genuine issues of material fact as to whether Officer Carmicle acted with reckless disregard; (3) granting summary judgment when discovery was incomplete; (4) denying Morton's motion to strike his deposition testimony from the record; and (5) denying in part Morton's motion to compel. Finding no reversible error, we affirm.

*327 SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On or about November 21, 2003, at approximately 9:00 p.m., Tyrone Morton sustained personal injuries while jogging on the side of Industrial Road[1] located in Shelby, Bolivar County, Mississippi. Industrial Road is an east-west route that connects "old" Highway 61 (a/k/a Highway 161) with the new four-lane Highway 61. Morton was injured when he was struck by a marked police automobile operated by Officer Carmicle, a City of Shelby police officer.
¶ 3. At the time of the accident, Officer Carmicle and fellow officer, Marion Bedford, were providing a police escort for at least one school bus that was transporting students from a sporting event. Officer Bedford was leading the escort, and Officer Carmicle was traveling at the rear of the procession. Morton was initially running with the traffic in the east-bound lane. However, at some point he crossed the road and was, at the time of the impact, running east via the west-bound lane of traffic. It is disputed whether, at the time of contact, Morton was in the roadway or on the grassy/gravel area just off the roadway. Morton was wearing dark-colored clothing, specifically red sweat pants and a blue hooded sweatshirt with the hood pulled over his head, and was not wearing any reflective gear. Morton testified that he jogged the same route approximately five days a week and that on four of these days he jogged at night, and Officer Bedford testified that it was not unusual to see Morton jogging around the area where he lived and in the community. Officer Bedford further testified that, during the escort, he saw a pedestrian cross the road in front of his vehicle and that it was because of his headlights that he was able to see the individual. Morton, however, testified that it would have been impossible for Officer Bedford to have seen him cross the road because the caravan was approximately a quarter of a mile behind him and just turning onto the road at the time he crossed.
¶ 4. According to Officer Bedford, the custom and practice of the Shelby Police Department is for the rear car to pass both the bus and the lead police vehicle in order to close down the four-lane highway briefly so that the bus could have safe access onto the highway. On the night in question, as the caravan approached the four-lane highway, Officer Carmicle attempted to pass the school bus and Officer Bedford's vehicle. At some point while attempting such pass, Officer Carmicle's vehicle struck Morton. The impact dislodged both the side mirror and spotlight on Officer Carmicle's car. The impact also sent shattered glass into the vehicle, which cut Officer Carmicle's eye. Officer Carmicle then radioed Officer Bedford and informed him that something had hit his vehicle but that he was unaware of what it was. Morton testified that the impact caused him to tumble onto the hood of Officer Carmicle's car and into the windshield before falling to the side of the car.
¶ 5. According to Officer Bedford, when the officers reached the four-lane highway, approximately a quarter of mile down the road, he informed Officer Carmicle that he had seen a pedestrian run across the road. Officer Bedford testified that the officers then returned to the point of impact, where they found Morton lying injured on the side of the road. Morton, however, testified that the impact of Officer Carmicle's vehicle knocked him into a ditch. Following the accident, Officer Carmicle and Morton were transported in the same *328 ambulance to a hospital in Cleveland, Mississippi. Morton testified that, in the ambulance, Officer Carmicle told Morton that he did not see him jogging on the road. Morton also testified he did not think that Officer Carmicle would have hit him if he had seen him because the two had never had any problems with each other prior to the accident at issue.
¶ 6. On November 8, 2004, Morton filed a complaint in the Bolivar County Circuit Court alleging that Officer Carmicle violently, negligently, and recklessly struck Morton with his vehicle. Morton further alleged that Officer Carmicle exhibited a willful, wanton, and reckless disregard for Morton's safety and well-being. Following the commencement of discovery, on June 24, 2005, Morton filed a motion to compel. With such motion, Morton sought an order compelling Carmicle to, inter alia, (1) indicate whether he suffered any injuries in the accident at issue and, if so, to identify the nature of such injuries; (2) state whether a blood-alcohol or drug test was administered to Officer Carmicle following the accident at issue and, if so, to provide the results of such test; and (3) state whether Carmicle's vehicle sustained any damage during the accident and, if so, state whether the damage had been repaired and identify who made the repairs, a description of such repairs, and the total cost of the repairs.
¶ 7. Officer Carmicle moved for summary judgment on October 19, 2005, and a hearing was held on December 5, 2005, on the summary judgment motion and the aforesaid motion to compel discovery. During the hearing, Morton moved ore tenus, pursuant to Mississippi Rule of Civil Procedure 30(e), to strike his deposition testimony because he never read or signed the deposition attesting to its accuracy. At the conclusion of the hearing, the trial court denied from the bench Morton's ore tenus motion to strike his deposition testimony and took the motion for summary judgment and motion to compel under advisement. Subsequent to the hearing, the court granted Officer Carmicle's motion for summary judgment, finding that Morton had failed to adduce sufficient evidence indicating that Officer Carmicle acted with reckless disregard during the accident at issue. The trial court did not, however, rule on Morton's motion to compel.
¶ 8. On January 27, 2006, Morton filed a motion seeking relief pursuant to Rules 52, 59, and 60 of the Mississippi Rules of Civil Procedure, requesting that the trial court (1) strike his deposition; (2) compel Officer Carmicle to produce the discovery sought in the aforementioned motion to compel; (3) allow additional discovery; and (4) make additional findings of fact concerning Officer Carmicle's behavior. On March 6, 2006, the trial court issued an order granting in part and denying in part Morton's motion to compel discovery. The court ordered Officer Carmicle to state whether he was administered a blood-alcohol or drug test following the accident at issue, but found that any medical record documentation was protected by the physician-patient privilege. With regard to the repair documentation sought by Morton, the court found that the defendants had either already produced the information or did not have possession of it. On March 20, 2006, Morton filed a motion to clarify asking the trial court to clarify the status of the summary judgment order in light of the court's ruling on the motion to compel. Subsequently, on April 5, 2006, the trial court issued an order denying Morton's motion for relief and denying as moot Morton's motion to clarify.
¶ 9. Aggrieved, Morton appeals, arguing there were genuine issues of material fact as to whether Officer Carmicle was entitled to immunity under the Mississippi *329 Tort Claims Act and, therefore, that the grant of summary judgment in favor of Officer Carmicle and the City of Shelby constituted reversible error. Additionally, Morton appeals the trial court's denial of his ore tenus motion to strike his deposition testimony based on his failure to read and sign it and the trial court's grant of summary judgment prior to the completion of discovery. Finally, Morton contends that the trial court erred in denying in part his motion to compel discovery. We find no error and affirm the decision of the trial court.

STANDARD OF REVIEW
¶ 10. When reviewing a trial court's grant of summary judgment, this Court applies a de novo standard of review. Busby v. Mazzeo, 929 So.2d 369, 372(¶ 8) (Miss.Ct.App.2006). Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment is proper where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When considering a motion for summary judgment, the deciding court must view all evidence in a light most favorable to the non-moving party. Mazzeo, 929 So.2d at 372(¶ 8). Only when the moving party has met its burden by demonstrating that there are no genuine issues of material fact in existence should summary judgment be granted. Tucker v. Hinds County, 558 So.2d 869, 872 (Miss.1990). As applied to the case sub judice, this Court must determine whether Officer Carmicle and the City of Shelby adequately demonstrated that there are no triable issues with regard to whether they are immune from liability under the MTCA. See Mazzeo, 929 So.2d at 372(¶ 8) (citing Lyle v. Mladinich, 584 So.2d 397, 398 (Miss.1991)).
¶ 11. With regard to the issue of whether the trial court erred in denying Morton's motion to strike his deposition testimony, a motion to strike deposition testimony relates to the exclusion and admissibility of evidence and, therefore, typically calls for an abuse of discretion standard of review. Yoste v. Wal-Mart Stores, Inc., 822 So.2d 935, 936(¶ 7) (Miss.2002) ("[t]he standard of review regarding the admission or exclusion of evidence is abuse of discretion"). However, Morton's argument is grounded in the trial court's use of such testimony as grounds for summary judgment; thus, in light of these unusual circumstances, and so as to err on the side of caution, we will utilize a de novo standard of review for Morton's claim in this regard. As to Morton's claim that the trial judge erred in granting summary judgment before discovery was complete, we conclude that Morton's true complaint is that the trial court erred in refusing to allow additional discovery; thus, we will apply an abuse of discretion standard of review to this claim. Boutwell v. Boutwell, 829 So.2d 1216, 1223(¶ 30) (Miss.2002). Finally, with respect to the trial court's ruling on Morton's motion to compel discovery, the standard of review is abuse of discretion. French v. Druetta, 399 So.2d 1327,1329 (Miss.1981).

DISCUSSION
¶ 12. Morton raises four issues on his appeal of the trial court's grant of summary judgment; thus, each assignment of error will be discussed separately below.
I. Did the trial court commit reversible error by shifting the summary judgment burden to Morton, the non-moving party?
¶ 13. Morton argues that the trial court erred in applying an incorrect summary *330 judgment standard. He contends that the trial court shifted the burden of establishing a lack of any genuine issue of material fact to him rather than to the City and Officer Carmicle, the parties who moved for summary judgment.
¶ 14. The law of summary judgment is well-established. Summary judgment will only be granted when there is no genuine issue of material fact to be decided at trial; thus judgment is granted as a matter of law. Mink v. Andrew Jackson Cas. Ins. Co., 537 So.2d 431, 432-33 (Miss. 1988). "A material fact is one which resolves any `of the issues, properly raised by the parties.'" Strantz ex rel. Minga v. Pinion, 652 So.2d 738, 741 (Miss.1995) (quoting Stegall v. WTWV, Inc., 609 So.2d 348, 350-51 (Miss.1992)). Summary judgment may not be a substitute for trying disputed factual issues. Mink, 537 So.2d at 433 (citing Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss.1983)). To withstand summary judgment, the party opposing the motion must present sufficient proof to establish each element of each claim. Galloway v. Travelers Ins. Co., 515 So.2d 678, 684 (Miss.1987). Further, he must present more than a mere scintilla of colorable evidence to support his claims. Luvene v. Waldrup, 903 So.2d 745, 748(¶ 10) (Miss.2005) (citing Wilbourn v. Stennett, Wilkinson & Ward, 687 So.2d 1205, 1214 (Miss.1996)). The evidence must be sufficient that a fair-minded jury could return a favorable verdict. Id.
¶ 15. Importantly, "[m]ere allegation . . . of material fact is insufficient to generate a triable issue of fact" and avoid summary judgment. Palmer v. Biloxi Reg'l Med. Ctr., 564 So.2d 1346, 1356 (Miss. 1990) (citing Smith v. Sanders, 485 So.2d 1051, 1054 (Miss.1986)). Specifically, "the plaintiff may not rely solely upon the unsworn allegations in the pleadings or `arguments and assertions in briefs or legal memoranda.'" Id. (quoting Magee v. Transcon. Gas Pipe Line Corp., 551 So.2d 182, 186 (Miss. 1989)). "[W]hen a party, opposing summary judgment on a claim or defense as to which that party will bear the burden of proof at trial, fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law." Galloway v. Travelers Ins. Co., 515 So.2d 678, 684 (Miss.1987).
¶ 16. Morton takes issue with the following statement of the trial court in its ruling on the motion for summary judgment: "He [Morton] has failed to make a sufficient evidentiary showing that Defendant Carmicle was recklessly disregarding the safety of others when he attempted to pass the school bus during the nighttime police escort." Based on this statement, Morton argues that the trial court incorrectly applied the summary judgment standard by requiring him, the non-moving party, to show that there existed genuine issues of material fact rather than requiring the moving party, Officer Carmicle, to show the opposite. Morton contends that he was not required to make a "sufficient evidentiary showing"; rather, Morton argues that Officer Carmicle was required to show that there was no genuine issue of material fact.
¶ 17. Morton misunderstands the trial court's statement. To withstand summary judgment, the party opposing the motion must present sufficient proof to establish each element of each claim. Id. Under the Mississippi Tort Claims Act, "the plaintiff has the burden of proving `reckless disregard' by a preponderance of the evidence." Titus v. Williams, 844 So.2d 459, 468(¶ 37) (Miss.2003) (citing Simpson v. City of Pickens, 761 So.2d 855, 859(¶ 12) (Miss.2000)). Thus, contrary to Morton's assertion, he was required to *331 make an sufficient evidentiary showing of reckless disregard, and the trial court's statement in this regard was an accurate statement of the law. The trial judge found that Officer Carmicle and the City of Shelby had met their burden as the moving party of demonstrating that Morton had failed to adduce sufficient evidence establishing an essential element of his claim, that of reckless disregard.[2] Accordingly, the trial court correctly applied the summary judgment standard, and we find no merit to Morton's challenge in this regard.
II. Did the trial court err in finding that there were no genuine issues of material fact as to whether Officer Carmicle acted with reckless disregard?
¶ 18. Morton appeals the trial court's grant of summary judgment pursuant to section 11-46-9(1)(c) of the MTCA.
The Mississippi Tort Claims Act, Miss. Code Ann. §§ 11-46-1 to -23 (Rev.2002), provides the exclusive civil tort remedy against a governmental entity, and a government is exempt from liability for the performance of police duties unless the employee(s) acted "in reckless disregard for the safety and well-being of the plaintiff."
Titus, 844 So.2d at 468 (citing Miss.Code Ann. § 11-46-7(1) and 11-46-9(1)(c) (Rev. 2002)). In this case, it is undisputed that Carmicle was acting within the course and scope of his employment with the City of Shelby Police Department at the time of the accident at issue. Thus, as was previously discussed, Morton bore the burden of establishing that Officer Carmicle acted with reckless disregard of the safety and well being of others in striking Morton with his vehicle. Id. at 468.
¶ 19. Reckless disregard is a higher standard than gross negligence. Miss. Dep't. of Pub. Safety v. Durn, 861 So.2d 990, 994(¶ 10) (Miss.2003). This standard "embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." Id. at 995(¶ 10) (quoting City of Jackson v. Lipsey, 834 So.2d 687, 691-92 (Miss.2003)). "Reckless disregard usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." Id. (quoting Maye v. Pearl River County, 758 So.2d 391, 394(¶ 19) (Miss.1999)). Reckless disregard has consistently been found where the conduct at issue demonstrates that the actor appreciated the unreasonable risk at stake and deliberately disregarded "that risk and the high probability of harm involved." Id. at 995 (quoting Maldonado v. Kelly, 768 So.2d 906, 910-11(¶ 11) (Miss. 2000)).
¶ 20. The trial court determined that Morton failed to adduce sufficient evidence indicating that Officer Carmicle acted with reckless disregard for the safety and well being of others on the night of the accident at issue. We agree. A review of the record reveals no evidence indicating that Officer Carmicle was acting with reckless disregard when he struck Morton with his vehicle. The evidence indicates that Morton was jogging in the dark wearing dark clothing and no reflective gear at the time Officer Carmicle struck him. There is no probative evidence indicating that Officer Carmicle was aware of Morton's presence or that he was driving in a reckless manner in attempting to pass the school bus *332 and Officer Bedford. Thus, nothing in the record supports a finding that Officer Carmicle's actions on the night in question constituted a deliberate disregard of a known risk or a willingness that harm would occur. While Officer Carmicle's actions might constitute negligence, they do not rise to the level of reckless disregard.
¶ 21. Morton argues that there was evidence in the record indicating that Officer Carmicle was traveling at an excessive rate of speed in a non-emergency situation and, therefore, that there was a genuine issue of fact regarding whether Officer Carmicle acted with reckless disregard. The trial court concluded that the only evidence in the record concerning the speed of Officer Carmicle's vehicle was the accident report indicating that his estimated speed was thirty-five miles-per-hour. The trial court also noted that it inquired about the speed limit on the road in question at the hearing on the motion for summary judgment, and that the best estimate that could be provided by either party was a range from thirty to forty miles-per-hour. Morton, however, argues that, in light of Officer Bedford's testimony that the speed limit was usually followed when providing an escort and that he thought the speed limit was forty-five miles-per-hour, it stands to reason that the caravan was traveling the speed limit on the night at issue and that Officer Carmicle had to significantly exceed such limit in order to attempt to pass the bus and Officer Bedford's vehicle.
¶ 22. However, there is no definitive evidence in the record indicating the speed at which Carmicle was traveling at the time of the accident; thus, as the trial court noted, Morton's contention that Officer Carmicle was speeding is nothing more than an allegation with no evidentiary support, and unsubstantiated allegations are insufficient to defeat summary judgment. Green v. Allendale Planting Co., 954 So.2d 1032, 1038(¶ 13) (Miss.2007) (citing Richmond v. Benchmark Constr. Corp., 692 So.2d 60, 61 (Miss.1997)). Moreover, even if this Court were to accept Morton's argument that Carmicle was speeding at the time of the accident, as the trial court stated, there is absolutely no evidence that the officer was traveling so far in excess of the speed limit to rise to the level of reckless disregard.[3] While the fact that Officer Carmicle was speeding might indicate negligence, it is the much higher standard of reckless disregard that Morton must demonstrate. The mere act of speeding, with no indication as to how far in excess of the speed limit he was traveling, falls far short of demonstrating willful or wanton conduct on the part of Officer Carmicle. Accordingly, we find no error in the trial court's conclusion in this regard.
¶ 23. Morton next argues that the failure of Officer Carmicle to stop immediately after striking an unknown object supports a presumption that he acted with reckless disregard for the safety of others under the totality of the circumstances. In so arguing, Morton contends that a reasonably prudent individual and law enforcement officer would have immediately stopped and identified the person or object struck instead of proceeding with the escort. Based on this contention, Morton agues that Officer Carmicle's actions *333 should be deemed reckless as a matter of law or at the very least presumed to be reckless. The trial court rejected this argument, stating that "actions taken after the impact are not necessarily reflective of driving demeanor prior to and at the time of the accident." The trial court also found that, given that Officer Carmicle was injured while passing a school bus transporting students during a police escort, his act of traveling a quarter mile before returning to the point of impact did not evidence reckless disregard. This Court agrees.
¶ 24. Morton cites to no persuasive authority for his proposition that an officer's actions after an incident may be utilized to infer or create a presumption that the officer was reckless before or during the accident. Morton relies on Thomas v. Mississippi Dep't of Pub. Safety, 882 So.2d 789 (Miss.Ct.App.2004) in which this Court stated that one must consider the totality of the circumstances in making a reckless disregard determination. Id. at 796(¶ 20) (citing City of Jackson v. Brister, 838 So.2d 274, 279(¶ 20) (Miss.2003)). However, Thomas did not involve a situation in which the court used the actions of the officer following the accident at issue to justify a finding that the officer acted with reckless disregard prior to or at the time of the accident. Thus, the court's statement in Thomas that the totality of the circumstances should be considered in determining whether the officer acted with reckless disregard does not support Morton's contention that Officer Carmicle's actions after the accident indicate that he acted with reckless disregard prior to or at the time of the accident.
¶ 25. Morton also relies on Estate of Williams v. City of Jackson, 844 So.2d 1161 (Miss.2003). In Williams, the estate of an automobile driver filed suit after a fire truck that had been dispatched to the scene of a fire struck the driver's vehicle at an intersection. Id. at 1163(¶ 5). The driver's estate argued that he was safely stopped at the intersection when the fire truck ran into him. Id. at 1165(¶ 14). The court found this argument to be irrelevant, stating that the operation of a vehicle involves both moving and stopping. Id. Morton relies on this statement in arguing that the fact that Officer Carmicle did not stop immediately after the accident indicates that he acted with reckless disregard prior to or at the time of the accident. However, again, Morton seeks to find support where it does not exist. In making the aforementioned statement, the Williams court was merely indicating that the plaintiff would still have been operating his car even if the car was stopped. There is nothing in the facts or the court's language indicating that the court meant to convey that an officer's actions after an accident can support an inference of reckless disregard prior to or at the time of the accident. Accordingly, as Morton has presented this Court with no authority supporting his argument that Officer Carmicle's actions after the incident support the inference that he was reckless as a matter of law at the time of the accident, we find no error in the trial court's rejection of such argument.
¶ 26. Morton next argues that the trial court erred when it found that there was no genuine issue of material fact as to his visibility on the night in question. With regard to visibility, the trial court stated the following:
The record shows that the lead driver, Officer Bedford, did see Plaintiff before the accident. On this basis, Plaintiff claims Defendant Carmicle should also have seen him. The record, reflects, however, that Officer Bedford, who was driving the lead car, only saw Plaintiff when he crossed the road in front of the *334 caravan. Plaintiff testified on page 56 of his deposition that he crossed the road when the caravan was about one-quarter of a mile behind him. It follows that Officer Bedford was able to see Plaintiff because Plaintiff ran directly in front of the lead car's headlights. In contrast, Defendant Carmicle was driving behind the lead car and at least one school bus. It would be nearly impossible for Defendant Carmicle to have had actual knowledge of Plaintiff's presence one-quarter mile away, at night, behind a police car and at least one school bus.
In denying Morton's motion for relief, the trial court again found that the overwhelming weight of evidence demonstrated that Morton was dressed in dark clothing on a dark night and Officer Carmicle could not see him jogging on the side of the road.
¶ 27. Morton contends that the trial court ignored evidence in the record that disputed the testimony of Officer Bedford. This evidence, according to Morton, is as follows: (1) Morton testified that he crossed the road when he looked back and saw the lead patrol car and a school bus was turning onto the 16th Section Road which was a quarter mile behind him; (2) Morton testified that he was off the paved section of the road in the grassy area, and that the lead patrol car and a bus had already passed him when Carmicle struck him; and (3) Morton testified that he was struck at the Industrial Park entrance and there is lighting between or near such entrance and Highway 161. This evidence, however, is not sufficient to create a genuine issue of material fact as to Morton's visibility on the night in question.
¶ 28. It does appear that the location of Officer Bedford and the caravan at the time Morton crossed the road is a disputed fact; however, it is not a material fact, i.e., a fact that could change the outcome of the case, in that it has no bearing on Morton's visibility to Officer Carmicle at the time of the accident. See Oaks v. Sellers, 953 So.2d 1077, 1080(¶ 8) (Miss.2007) (quoting Simmons v. Thompson Mach. of Miss., Inc., 631 So.2d 798, 801 (Miss.1994)). With regard to Morton's exact location at the time of impact, the trial court found that, even if Morton was on the side of, and not in or on, the road at the time he was struck by Officer Carmicle, this fact was not material so as to preclude a grant of summary judgment. The trial court reasoned that, even if Officer Carmicle left the paved portion of the road when he struck Morton, this fact would still not evince behavior that constituted reckless disregard. This Court agrees. While the act of leaving the road may indicate negligence, it does not provide evidence that Officer Carmicle acted in a willful and wanton manner by knowingly and intentionally committing a wrongful act, especially given Officer Carmicle's need to avoid the school bus that he was in the process of passing. As for the lighting issue, Morton did state that there are approximately three street lights somewhere between or near the Industrial Park entrance; however, the mere fact that there may have been some lighting at or near the point of impact does not demonstrate that Officer Carmicle did in fact see Morton jogging on the side of the road or that he appreciated, and then disregarded, a known risk in striking Morton with his vehicle. Thus, we find no error in the trial court's ruling as it pertains to Morton's visibility at the time of the accident.
¶ 29. Morton also argues that the trial court erred in using a statement that Morton made regarding his visibility at the time of the accident as a basis for granting summary judgment. Morton made the following statement in his deposition: "Well, I don't think he'd have hit me if he'd seen me I don't think because I don'twe never *335 had any problems." This statement was in response to questioning by Officer Carmicle's counsel as to whether Morton believed Officer Carmicle when he said in the ambulance that he did not see him. Morton takes issue with the fact that the trial court only cited in its ruling the first half of his statement, leaving off the portion about he and Officer Carmicle never having had any problems. According to Morton, his statement was intended to convey that he had no reason to believe that Officer Carmicle would intentionally harm him, not that he was not visible. However, while Morton's statement is admittedly ambiguous, the trial court specifically stated that the statement was not, by itself, indicative of reckless disregard on the part of Officer Carmicle, but that it did undermine Morton's attempt to show that Officer Carmicle appreciated any danger at the time of the accident. The trial court then further supported its finding that Morton was not visible to Officer Carmicle at the time of the accident by stating that Morton was wearing dark clothing with no reflective gear. Therefore, even if the trial court misconstrued Morton's statement, such statement was not central to the court's grant of summary judgment, and disregarding the statement does not create a genuine issue of material fact as to Morton's visibility on the night in question. Morton's argument in this regard is without merit.
¶ 30. Morton also contends that the following facts were sufficient to create a genuine issue of material fact and thereby preclude a grant of summary judgment: (1) Officer Carmicle was operating his vehicle in non-emergency circumstances, (2) Officer Carmicle desired to arrive at the intersection of Highway 61 before the vehicle operated by Officer Bedford and the school bus, (3) Officer Carmicle sustained an eye injury from shattered glass but continued to operate his vehicle and proceeded to the intersection, (4) Officer Carmicle's arrival at the intersection prior to Officer Bedford was not absolutely necessary, (5) Officer Carmicle attempted to pass a patrol vehicle and a bus on a road with little lighting, and (6) no sirens were being used by Carmicle which would alert Morton to his presence.[4] However, we find that these facts indicate, at the most, simple negligence on the part of Officer Carmicle. They do not, even considered as a whole, demonstrate that Officer Carmicle acted with reckless disregard so as to defeat summary judgment.
¶ 31. Finally, Morton relies on the case of Maye v. Pearl River County, 758 So.2d 391 (Miss.1999) as support for his argument that there was sufficient evidence in the record demonstrating that Officer Carmicle acted with reckless disregard for the safety and well being of others. Maye, however, is distinguishable from the case sub judice. In Maye, the Mississippi Supreme Court found that a police officer who, after checking his rear view mirror, backed his car up an incline to the entrance of a parking lot and then collided with another vehicle, acted with reckless disregard. Id. at 392 (¶ 3-5). The court found that the fact that the officer backed up the incline knowing that he could not see what was on the other side of the incline constituted reckless disregard in that the officer did not merely fail to exercise due care, but rather failed to exercise any care at all. Id. at 395 (¶ 21-22). In the case at bar, however, there is no evidence that Officer Carmicle disregarded a known danger or failed to exercise any *336 care in attempting to pass the caravan. Morton contends that it was reckless for Officer Carmicle to attempt to pass the bus and Officer Bedford in the dark knowing that he could not see around them. However, there is no evidence in the record indicating that, in attempting the pass, Officer Carmicle crossed a yellow line, was traveling at an excessive rate of speed, failed to look prior to attempting the pass, was unable to see if there was any oncoming traffic, or any other circumstance equivalent to the officer's actions in Maye. On the contrary, the evidence reveals that Officer Carmicle pulled out to pass the bus and Officer Bedford but accidentally hit a pedestrian who was jogging in the dark. Thus, Maye does not support a finding of reckless disregard on the part of Officer Carmicle, and we find no error in the trial court's holding.[5]
III. Did the trial court err in denying Morton's ore tenus motion to strike his deposition testimony based on his failure to affirm such testimony and then using the deposition testimony as grounds for granting summary judgment?
¶ 32. Morton contends that the trial court committed reversible error when it denied his ore tenus motion to strike his deposition testimony based on his failure to read and attest to its accuracy and then using such testimony as a basis for granting summary judgment. Morton argues that, under Mississippi Rule of Civil Procedure 30(e), it is the responsibility of the party who took the deposition and subsequently seeks to use it, in this case Officer Carmicle and the City, to submit the deposition to the witness for affirmation. Rule 30(e) states as follows:
When the testimony is taken by stenographic means or is recorded by other than stenographic means as provided in subsection (b)(4) of this rule, and if the transcription or recording thereof is to be used at any proceeding in the action, such transcription or recording shall be submitted to the witness for examination, unless such examination is waived by the witness and by the parties. Any changes in form or substance which the witness desires to make shall be entered upon the transcription or stated in a writing to accompany the recording, together with a statement of the reasons given by the witness for making them. Notice of such changes and reasons shall promptly be served upon all parties by the party taking the deposition. The *337 transcription for recording shall then be affirmed in writing as correct by the witness, unless the parties by stipulation waive the affirmation. If the transcription or recording is not affirmed as correct by the witness within thirty days of its submission to him, the reasons for the refusal shall be stated under penalty of perjury on the transcription or in a writing to accompany the recording by the party desiring to use such transcription or recording. The transcription or recording may then be used fully as though affirmed in writing by the witness, unless on a motion to suppress under Rule 32(d)(4) the court holds that the reasons given for the refusal to affirm require rejection of the deposition in whole or in part.

M.R.C.P. 30(e). At the hearing held on Morton's motion for relief, the trial court judge denied Morton's motion to strike his deposition testimony, stating that the court would accept the certification of the court reporter that the transcript was a true recitation of the proceedings.
¶ 33. There is some dispute in this case as to whether the court reporter who transcribed Morton's deposition did in fact send Morton a copy of the transcript of the deposition. Following receipt of Officer Carmicle's motion for summary judgment, which relied in part on certain excepts from Morton's deposition, Morton's counsel notified Officer Carmicle's counsel that Morton had not yet received a copy of his deposition and requested that Officer Carmicle's counsel forward a copy of the deposition to Morton. Officer Carmicle's counsel responded with a letter advising Morton's counsel to contact the court reporter who transcribed the deposition in order to obtain copies of the transcript. The letter further stated that, on July 5, 2005, the court reporter mailed a letter[6] to Sarah O'Reilly-Evans, one of Morton's attorneys, indicating that the transcript of Morton's deposition was ready and that Morton needed to contact her within thirty days to review it. Morton's counsel then wrote to Officer Carmicle's counsel and stated that she had not received any such letter from the court reporter and again requested that Officer Carmicle's counsel provide a copy of Morton's deposition testimony, to which Officer Carmicle responded by again advising Morton's counsel to contact the court reporter to obtain a copy of the transcript. According to Officer Carmicle's counsel, the court reporter informed him that she had mailed the transcript C.O.D. to O'Reilly-Evans, but O'Reilly-Evans never retrieved the package from the post office. O'Reilly-Evans contends that the reason she did not retrieve the package was that she was not expecting a C.O.D. delivery and the card notifying her of the package did not indicate that it was from the court reporter. Moreover, contends Morton, the package did not include his deposition transcript, but rather that of Officer Bedford and Officer Danny Daniels.
¶ 34. Although Morton argues that Rule 30(e) mandates that Officer Carmicle was duty-bound to provide him with a copy of the deposition, the rule does not state whose responsibility it is to submit the deposition to the testifying witness, i.e., the court reporter or the party taking the deposition. Regardless, it is undisputed that Morton did not examine the testimony prior to the summary judgment proceeding and did not waive his right to an examination; thus, according to Rule 30(e), Carmicle's counsel was not permitted to use Morton's deposition testimony as a basis for summary judgment without an accompanying statement regarding Morton's *338 refusal or failure to affirm the testimony. Here, of course, Officer Carmicle's counsel was not aware until after he had filed the motion for summary judgment that Morton had not reviewed his deposition testimony.[7]
¶ 35. Despite the lack of such a statement, the issue of Morton's failure to affirm his deposition testimony did eventually come before the trial court, and the court denied Morton's motion to strike, accepting the certification of the court reporter that the transcript was a true recitation of the proceedings. According to Mississippi Rule of Civil Procedure 30(f), a court reporter's certification that a transcript is a true record of the witness' testimony is "considered prima facie evidence of the testimony of the witness." M.R.C.P. 30(f)(1). Thus, although the exact requirements of Rule 30(e) were not followed at the trial level, this Court finds no reversible error in the trial court's denial of Morton's motion to strike. While Morton did not examine his deposition testimony prior to the summary judgment hearing, he has not alluded to any portions of his deposition testimony that he believes to be inaccurate nor has he demonstrated how such inaccuracies serve to create genuine issue of material fact as to whether Officer Carmicle acted with reckless disregard. Thus, this Court finds that Morton has not shown that he was prejudiced by the trial court's use of his deposition testimony. In fact, Morton relies upon portions of the same deposition in his attempt to avoid summary judgment. Accordingly, we find no reversible error in the trial court's denial of Morton's ore tenus motion to strike his deposition testimony from the record.
IV. Did the trial court commit reversible error in denying in part Morton's motion to compel?
¶ 36. Morton argues that the trial court erred in denying his motion to compel discovery as it pertained to whether Officer Carmicle was administered a blood alcohol test following the accident at issue and to whether there was repair documentation for Officer Carmicle's vehicle. Prior to the trial court's grant of summary judgment to Officer Carmicle, Morton filed a motion to compel discovery responses seeking an order compelling Officer Carmicle to, inter alia, (1) state whether a blood alcohol or drug test was administered to him following the accident and, if so, to provide the results of such test and access to Officer Carmicle's medical records as they pertain to his injuries resulting from the accident, and (2) state whether Carmicle's vehicle sustained any damage during the accident and, if so, state whether the damage had been repaired and identify who made the repairs, a description of such repairs, and the total cost of the repairs. After the trial court granted summary judgment, Morton called to the court's attention the fact that the motion to compel had not been ruled upon. Subsequently, the trial court issued an order granting in part and denying in part Morton's motion. With regard to whether a blood alcohol test was administered to Officer Carmicle following the accident, the trial court ordered Officer Carmicle to provide an answer as to whether such a test was administered, but the *339 court found that the remaining request for medical documentation was protected by the physician-patient privilege set forth in Mississippi Rule of Evidence 503(b) and (f) and that Officer Carmicle had not waived this privilege. In response to the court's order, Officer Carmicle stated that he had no recollection of a blood alcohol or drug test being administered to him following the accident.
¶ 37. With respect to any repairs that were performed on the vehicle, Officer Carmicle did state that the vehicle sustained damage and that the mirror and the spotlight were repaired. Officer Carmicle also provided black and white photocopies of the original photographs of the damaged vehicle. In response to Morton's contention that the black and white copies were difficult to view, the trial court instructed the parties to arrange for Morton to be provided with color copies. As to the remaining information regarding repairs, the trial court found that Officer Carmicle had either already provided the information or did not have possession of such information.
¶ 38. On appeal, Morton contends that the trial court erred in refusing to order Officer Carmicle to provide access to his medical records for the purpose of determining if a blood alcohol test was administered following the accident. Officer Carmicle counters that the trial court was correct in finding that the medical information sought is protected by the physician-patient privilege.
¶ 39. Mississippi Rule of Evidence 503 states in pertinent part as follows:
(b) General Rules of Privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing (A) knowledge derived by the physician or psychotherapist by virtue of his professional relationship with the patient, or (B) confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addition, among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.
. . . .
(f) Any party to an action or proceeding subject to these rules who by his or her pleadings places in issue any aspect of his or her physical, mental or emotional condition thereby and to that extent only waives the privilege otherwise recognized by this rule. . . .
M.R.E. 503(b) and (f). Morton does not appear to contest the trial court's finding that Officer Carmicle's medical records, including the results of any blood alcohol test that may have been administered, fall within the scope of the physician-patient privilege, nor would such an argument be successful. The Mississippi Supreme Court has stated that "Rule 503 could certainly be interpreted to include the names and results of tests conducted by the physician and those under his or her direction."[8]Franklin Collection Serv. v. Kyle, 955 So.2d 284, 289(¶ 15) (Miss.2007). If a blood alcohol or drug test was administered at the hospital following the accident, *340 the results of such test would clearly constitute knowledge derived by Officer Carmicle's physician by virtue of a professional relationship and would be privileged. Moreover, there is no indication from the record that Officer Carmicle waived the privilege by putting his medical condition at issue.[9]
¶ 40. Instead, Morton argues that the trial court should have allowed him access, at least in camera, to Officer Carmicle's medical records based on public policy concerns. In so arguing, Morton relies on Baptist Mem'l Hosp.-Union County v. Johnson, 754 So.2d 1165 (Miss.2000), a medical malpractice case in which a newborn baby was taken by one of the hospital's nurses to the wrong mother for breastfeeding. Id. at 1167(¶ 2). After the plaintiffs filed suit, the hospital refused to identify the woman who nursed the baby on the grounds that the information was medically privileged. Id. On interlocutory appeal addressing the scope of the privilege, the supreme court stated that the physician-patient privilege is not absolute and "`must give way where it conflicts with the sensible administration of the law and policy.'" Id. at 1170 (citing State v. Baptist Mem'l Hosp.-Golden Triangle, 726 So.2d 554, 560 (Miss.1998)). The court also stated that "[i]n some instances, in camera inspection may be necessary" and that, in other instances, "where the need for confidentiality is relatively weak and the need for the information in the matter at hand relatively strong, complete unrestricted access may be the rule." Id. at 1170-71(¶ 23). Based on these findings, the court ordered the hospital to disclose the woman's medical records to the presiding judge for an in camera inspection and also instructed that a protective order could be utilized if necessary. Id. at 1171(¶ 25).
¶ 41. In the case sub judice, however, the considerations that counseled piercing the physician-patient privilege in Baptist Mem'l simply are not present. Morton asserts that there is a possibility that Officer Carmicle was impaired at the time of the accident at issue, but there is absolutely no evidence supporting such an assertion. Morton never alleged in his complaint that Officer Carmicle was impaired at the time of the accident. Moreover, Officer Carmicle stated that he does not recall being administered a blood alcohol or drug test. Thus, in attempting to gain access to Officer Carmicle's medical records, Morton is engaged in nothing more than a fishing expedition. If this Court were to allow Morton to pierce the physician-patient privilege based solely on the off-chance that Officer Carmicle was impaired at the time of the accident, the effect would be to obliterate the privilege. Accordingly, we find no error in the trial court's denial of Morton's motion to compel as it pertains to Officer Carmicle's medical records.
¶ 42. Morton also argues that the trial court abused its discretion in denying the motion to compel as it pertained to information related to the repairs of the police vehicle. Although the trial judge intimated at the hearing on the motion to compel that he was inclined to order the repair information produced, the trial court ultimately found that Officer Carmicle had either already provided the information sought or did not have such information in his possession. At the hearing on the motion for summary judgment, Officer *341 Carmicle's counsel stated that he did not know of any repair documentation but that he would be willing to inquire again into whether such documentation existed. It is, however, unclear from the record if such an inquiry occurred and what came of it. Thus, it remains unknown whether any repair documentation exists.
¶ 43. Nonetheless, even if the trial court erred in finding that Officer Carmicle was not in possession of any repair-related documentation, this Court finds no reversible error in the trial court's denial of Morton's motion to compel as it pertained to such documentation. Morton contends that information regarding any repairs that were performed on Officer Carmicle's vehicle following the accident was needed for submission to an accident reconstruction expert for the purpose of providing an opinion on the speed of the vehicle and Morton's visibility at the time of the accident. However, while Morton filed the motion to compel on June 24, 2005, he did not notice the motion for hearing until December 5, 2005, the same day as the hearing on the motion for summary judgment and well beyond the discovery deadline of August 30, 2005. Therefore, even if the trial court had ordered the repair documentation produced, Morton would still have had to obtain an accident reconstruction expert and allow time for such expert to make his findings and disclose them to opposing counsel, all while the summary judgment motion was ripe for decision. Although the parties apparently attempted to resolve the discovery dispute during the time between when the motion to compel was filed and when it was set for hearing, if Morton needed the accident reconstruction findings in order to establish reckless disregard, then he should have brought his motion on for hearing as soon as possible after it was filed rather than on the same day as the summary judgment motion. Accordingly, we decline to overturn summary judgment based upon what disclosure of this information might have revealed to a yet-to-be-determined expert witness. Morton's claim in this regard is without merit.
IV. Did the trial court err by granting Officer Carmicle's motion for summary judgment before the completion of discovery?
¶ 44. In his next assignment of error, Morton argues that the trial court erred in granting summary judgment prior to the completion of discovery. As was previously discussed, following the trial court's grant of summary judgment to Officer Carmicle, Morton filed a motion for relief pursuant to Rules 52, 59, and 60 of the Mississippi Rules of Civil Procedure advising the trial judge that he had not ruled on Morton's motion to compel discovery and requesting additional time for discovery. In response, the trial judge ruled on the motion to compel and ordered Officer Carmicle to state whether a blood alcohol or drug test was performed and ordered the parties to arrange for Morton to be provided with color copies of photographs of Officer Carmicle's vehicle at Morton's expense; the trial court, however, denied Morton's request for additional discovery.
¶ 45. Morton argues that it was an abuse of discretion for the trial court to order Officer Carmicle to comply with the aforementioned discovery requests,[10] but then refuse to allow Morton the opportunity to conduct additional discovery subsequent *342 to the receipt of the requested information. Morton contends that his request for additional discovery was tantamount to a Rule 56(f) motion for a continuance. Mississippi Rule of Civil Procedure 56(f) states as follows:
(f) When Affidavits are Unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.
M.R.C.P. 56(f). However, Rule 56(f) clearly contemplates that the motion should be filed prior to the trial court's grant of summary judgment. Morton did not file such a motion prior to the trial court's grant of summary judgment in favor of Officer Carmicle; rather, he merely noted in his opposition to the motion for summary judgment his contention that Officer Carmicle had failed to respond to his discovery requests completely and in a timely manner.
¶ 46. Regardless, however, of whether or when Morton moved for a continuance pursuant to Rule 56(f), this Court finds no error in the trial court's refusal to allow Morton additional time for discovery. Although the trial court did not specifically address the request for additional discovery in its denial of Morton's motion for relief, "[t]he control of discovery is a matter committed to the sound discretion of the trial judge." Holland v. Mayfield, 826 So.2d 664, 673(¶ 37) (Miss.1999). As was discussed above, the discovery deadline of August 30, 2005, had long since passed at the time Morton requested additional discovery. Moreover, despite his contention that the supplemental discovery responses provided by Officer Carmicle necessitated that he be allowed to conduct additional discovery, Morton provided no explanation to the trial court judge, nor has he provided any explanation to this Court, as to what new information was gleaned from such responses, what information would have been sought if he had been allowed additional time for discovery, or how such information would bear upon the issue of whether summary judgment was appropriate.[11] He merely states in conclusory fashion that additional discovery was necessary, namely the opportunity to depose Officer Carmicle.[12] Thus, Morton has failed to demonstrate how he was prejudiced by the trial court's refusal to allow additional discovery. Having failed to establish any narrowly-tailored issues to be addressed by additional discovery, Morton's request for such amounts to nothing more than an attempt to re-open the entire discovery process. Accordingly, this Court finds no error in the trial court's refusal to allow Morton additional time for discovery.

CONCLUSION
¶ 47. We find that the circuit court was correct in finding that there were no genuine issues as to whether the immunity *343 found in Mississippi Code Annotated section 11-46-9(1)(c) applied to Officer Carmicle and the City of Shelby. We further find that the circuit court did not commit reversible error in denying Morton's request for additional discovery, his motion to strike his deposition testimony, and his motion to compel. We therefore affirm the court's grant of summary judgment in favor of Officer Carmicle and the City.
¶ 48. THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] This road is also referred to as the "16th Section Road" in portions of the record.
[2] Morton argues that the trial court improperly weighed the evidence in granting summary judgment to Officer Carmicle and the City; however, the court did not weigh competing evidence, but rather found that the evidence adduced by Morton did not serve to create a genuine issue as to reckless disregard.
[3] It is for this reason that Morton's reliance on City of Jackson v. Perry, 764 So.2d 373 (Miss.2000) is misplaced. In Perry, the court found that a police officer acted with reckless disregard in striking the plaintiff's vehicle based on, inter alia, the fact that the police officer was traveling at a speed of at least fifty-six miles-per-hour in a thirty-five mile-per-hour zone. Id. at 377(¶ 18). In the case sub judice, however, there is no evidence indicating that Officer Carmicle was traveling at an excessive rate of speed.
[4] Although there is no evidence that Officers Carmicle and Bedford were using their sirens at the time of the accident, it is undisputed that their blue lights were on and that Morton saw such lights prior to the time of the accident.
[5] Officer Carmicle also argues that he is immune from liability based on the discretionary function immunity set forth in the MTCA, which is as follows:

A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
. . . .
(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused. . . .
Miss.Code Ann. § 11-46-9(1)(d) (Rev.2002). Officer Carmicle raised this argument in his motion for summary judgment at the trial level; however, the trial court did not address it, choosing instead to grant summary judgment based solely on the finding that Morton had failed to adduce sufficient evidence that Officer Carmicle acted with reckless disregard. Thus, based on the fact that the trial court did not make a finding on this issue and on the fact that we affirm the court's grant of summary judgment based on Morton's lack of a showing a reckless disregard, this Court need not address whether Officer Carmicle is immune from liability under the discretionary function immunity. Were we not affirming summary judgment pursuant to section 11-46-9(1)(c), we would remand this case for a determination of immunity under Section 11-46-9(1)(d).
[6] A copy of the letter is included in the record; however, the copy is unsigned.
[7] Rule 32(d)(4) of the Mississippi Rules of Civil Procedure provides as follows:

Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, endorsed, transmitted, filed, or otherwise dealt with by the officer under Rules 30 and 31 are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained.
[8] There is no indication in this case that a blood alcohol test was ordered by a law enforcement officer working the accident, in which case the results of such test would not be protected by the physician-patient privilege. See Whitehurst v. State, 540 So.2d 1319, 1324 n. 1 (Miss.1989) (noting that the results of a blood alcohol test performed at the request of a law enforcement officer are not protected by the physician-patient privilege because, in such circumstance, the test is not performed pursuant to a professional relationship for the purpose of diagnosis or treatment).
[9] At the hearing on the motion for summary judgment, the trial judge did suggest the possibility that the Officer Carmicle's medical records could be produced in camera; however, the judge ultimately found that the records were protected by the physician-patient privilege.
[10] According to Morton, although the trial court ordered Officer Carmicle to submit the supplemental discovery responses within fourteen days, the responses were not mailed until ten days after such deadline.
[11] In fact, Morton moved for additional discovery prior to receiving the supplemental responses.
[12] Morton had approximately ten months from the time this case was filed to the final discovery deadline of August 30, 2005, to depose Officer Carmicle; in fact, Officer Carmicle's deposition was scheduled for June 10, 2005, but was canceled by Morton due to scheduling conflicts. Morton contends that the information sought in the motion to compel, namely information related to whether a blood alcohol or blood test was administered and the photographs of the vehicle, was needed before Officer Carmicle could be deposed.